UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE BETH MEEKS,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | No. 2:13-cv-1522-EFB<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, plaintiff's motion is denied and defendant's motion is granted.

I.    BACKGROUND

Plaintiff filed an application for SSI on February 12, 2010, alleging that she had been disabled since January 1, 2007. Administrative Record ("AR") 184-190. Plaintiff's application was denied initially and upon reconsideration. *Id.* at 101-105, 109-113. On September 28, 2011, and February 6, 2012, hearings were held before administrative law judge ("ALJ") Peter Belli. *Id.* at 48-95. Plaintiff was represented by a non-attorney representative at the hearing, at which she and a vocational expert ("VE") testified. *Id.*

On March 30, 2012 the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[1] *Id.* at 14-29. The ALJ made the following specific findings:

1. The claimant has not engaged in substantial gainful activity since February 12, 2010, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative disk disease of the lumbar spine, scoliosis, hepatitis C, mild obesity, and a mood disorder (20 CFR 416.920(c)).

\* \* \*

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

* * *

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is precluded from climbing ladders, ropes, or scaffolds. She can occasionally stoop, crouch, or crawl. She is limited to occasional public contact, and frequent contact with supervisors or coworkers. She could frequently use a telephone.

* * *

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

* * *

6. The claimant was born on December 14, 1963 and was 46 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 4116.964).

8. Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

* * *

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 12, 2010, the date the application was filed (20 CFR 416.920(g)).

*Id.* at 16-29.

Plaintiff's request for Appeals Council review was denied on April 17, 2013, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 6-8.

/////

II.     ANALYSIS

Plaintiff's sole argument is that the ALJ erred by rejecting the medical opinions of plaintiff's examining physician without providing legitimate reasons. ECF No. 20 at 5-9. To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Id.* Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1295 (9th Cir. 1996). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (*e.g.,* supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Plaintiff was evaluated by Dr. Robert Bilbrey on May 7, 2010. AR 326-328. Dr. Bilbrey diagnosed plaintiff with bipolar disorder, panic disorder with agoraphobia, and past polysubstnace abuse. *Id*. at 328. Dr. Bilbrey opined that plaintiff would have moderate difficulty interacting with others. *Id*. He further opined that plaintiff has "marked difficulty with concentrating and persisting independently at work-related activities at a steady pace, within a normal workday or work week, or respond to change in a routine work setting." *Id*. It was also his opinion that plaintiff could follow one and two part instructions and handle simple and complex tasks. *Id*.

/////

1 Lastly, he opined plaintiff "may have moderate difficult conforming to a schedule, with regular and punctual attendance, because of the interruption of her symptoms." *Id*.

The record also contains an opinion from Dr. Paxton, a state-agency reviewing psychiatrist. *Id*. 377-379. Dr. Paxton opined that plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions and in her ability to interact with the public. *Id*. at 377-378. Dr. Paxton found that plaintiff was not otherwise significantly limited. *Id*. at 377-379. He specifically found that plaintiff was not significantly limited in maintaining attention and concentration or performing within a regular work schedule. *Id*. at 377.

Rejecting Dr. Bilbrey's contradicted opinion, the ALJ found that Dr. Bilbrey's assessment of plaintiff's capacity was "somewhat contradictory" and at times "completely speculative." *Id*. at 27. To support this, the ALJ found that Dr. Bilbrey's opinion was (1) contradictory of his objective findings; (2) contrary to plaintiff's reported activities of daily living; (3) internally inconsistent; and (4) not consistent with treatment records. *Id*.

First, the ALJ noted that Dr. Bilbrey assessed a Global Assessment of Functioning ("GAF") score for plaintiff of 75, suggesting good functioning with only mild symptoms and limitations. *Id*. at 27. Citing *Mitchel v. Astrue*, 2010 WL 1994695 (C.D. Cal. 2010), plaintiff argues that reliance on the GAF score was error because the Social Security Administration has declined to endorse the scale for use in the Social Security and SSI disability programs. ECF No. 20 at 7. In *Mitchell*, the plaintiff argued that the ALJ erred by not incorporating his low GAF score in his assessed RFC. The court in *Mitchell* concluded that an ALJ is not bound to consider a plaintiff's GAF score, nor is the score determinative on a plaintiff's RFC assessment. *Id*. at 9. Here, the ALJ did not use the GAF score as determinative or biding. He simply pointed out the inconsistency of the score assigned by Dr. Bilbrey (one indicating good functioning) with the opinion by Dr. Bilbrey of marked difficulty in work functions. Inconsistencies between a doctor's objective findings and opinions can serve as specific and legitimate reasons for rejecting the doctor's opinions. *Bayliss v. Barnhart*, 427 F.3d 1211, 1215-16 (9th Cir. 2005); *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995). Thus, the ALJ properly relied on the inconsistency

/////

5

1  between the severe limitations assessed and plaintiff's GAF score of 75, which suggested only
2  mild symptoms and limitations.

3  Furthermore, the ALJ provided that Dr. Bilbrey's assessment was contradictory of
4  plaintiff's relatively normal daily living activities. AR at 27. Daily activities that are contrary to
5  the limitations opined by a doctor serve as a legitimate reason for rejecting the doctor's opinion.
6  *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601–602 (9th Cir.1999) (an ALJ may
7  reject a treating opinion that is inconsistent with other evidence in the record, including plaintiff's
8  reported daily activities).

9  Plaintiff testified that she maintains her own personal care, does household chores, cooks,
10 shops, keeps doctor appointments, visits relatives and grandchildren, reads, sews, has a driver's
11 license and can drive. AR 55, 61-64. The ALJ reasonably concluded that these activities are
12 inconsistent with the opinion that plaintiff would have marked difficulties with persistence,
13 concentration, and ability to keep a schedule. Plaintiff argues that because Dr. Bilbrey had
14 considered plaintiff's activities when reaching his opinion it was error to reject Dr. Bilbrey's
15 opinions based on plaintiff's daily activities. The argument is far from clear, but plaintiff cites
16 the court to *Regennitter v. Comm'r Soc. Sec. Admin*. 166 F.3d 1294, 1300 (9th Cir. 1999).
17 Nothing in *Regennitter* supports the conclusion that an ALJ may not use a plaintiff's daily living
18 activities to reject a doctor's opinion if the doctor also considered those activities.

19 The ALJ also found that Dr. Bilbrey's opinions that plaintiff was moderately and
20 markedly limited were inconsistent with his other assessed limitations. *Id*. at 27. Dr. Bilbrey
21 assessed plaintiff to have marked limitations in concentration and persistence at work-related
22 activities at a steady pace, within a normal work schedule or respond to changes in a routine work
23 setting. *Id*. at 328. He also opined she would have marked limitations in her ability to complete a
24 regular work schedule. *Id*. However, Dr. Bilbrey also opined that plaintiff could handle complex
25 tasks. *Id*. As discussed above, inconsistency in a doctor's opinions, observations, and clinical
26 notes "is a clear and convincing reason for not relying on the doctor's opinion" regarding the
27 claimant's abilities or limitations. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005);
28 *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995). Here, the ALJ reasonably concluded that

the marked limitations in concentration and persistence appeared to be contradictory to the finding that plaintiff could perform complex tasks.

Lastly, the ALJ provided that "treating source records show normal mental status examination findings and minimal ongoing symptoms that would affect the claimant's ability to work." AR 27. Plaintiff does not address this reason. *See* ECF No. 20 at 7-10. The record reflects that Dr. Bilbrey was the only specialist plaintiff saw for mental disorders. It appears that Dr. Burdham, plaintiff's treating family practitioner, provided treatment for plaintiff's medical disorders. AR 457-505. Nothing in the record indicates that plaintiff had any severe ongoing symptoms that would support Dr. Bilbrey's opinion. Furthermore, treatment notes for mental status exams conducted between March 2009 to November 2011 did not report any significant limitations. *Id*. at 346-350; 457-495; 498-505. This lack of objective evidence further supported the ALJ's rejection of Dr. Bilbrey's opinion. *See Buckner–Larkin v. Astrue,* 450 F. App'x 626, 628 (9th Cir. 2011) (holding that ALJ properly discounted physician's opinion that "was inconsistent with other medical evidence and opinions . . . .").

For the reasons discussed above, the court finds that the ALJ did not err in rejecting Dr. Bilbrey's opinion.

III.   CONCLUSION

The ALJ applied the proper legal standard and supported his decision with substantial evidence. Therefore, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: September 30, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

7